[Cite as *State v. Primeau*, 2012-Ohio-5172.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 97901**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## PETER A. PRIMEAU

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-556885

**BEFORE:** Cooney, J., Sweeney, P.J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 8, 2012

**ATTORNEYS FOR APPELLANT**

Fernando O. Mack
Myron P. Watson
Lakeside Place, Suite 420
323 West Lakeside Avenue
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Steven E. Gall
Kerry A. Sowul
Assistant County Prosecutors
9th Floor, Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

COLLEEN CONWAY COONEY, J.:

{¶1}   Defendant-appellant, Peter Primeau ("Primeau"), appeals his convictions for murder and felonious assault.   Finding no merit to the appeal, we affirm.

{¶2}   In March 2011, Primeau was indicted on two counts of murder.   In December 2011, Primeau was re-indicted on two counts of murder and one count of felonious assault.   A jury trial commenced in January 2012.   The jury found him guilty on all three charges, which were merged as allied offenses for sentencing.   The State elected to proceed on the second count of murder, in violation of R.C. 2903.02(B), and Primeau was sentenced to 15 years to life in prison.

{¶3}   Primeau now appeals, raising thirteen assignments of error.   We shall address his assigned errors out of order.

### Sufficiency and Manifest Weight

{¶4}   In the ninth assignment of error, Primeau argues that his convictions are against the manifest weight of the evidence.   In his tenth assignment of error, he argues that the court erred in denying his Crim.R. 29 motion based on insufficient evidence.

{¶5}   A challenge to the sufficiency of the evidence supporting a conviction requires the court to determine whether the State has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541.   On review for sufficiency, courts are to assess not whether the State's evidence is to be

believed, but whether, if believed, the evidence against a defendant would support a conviction. *Id.* The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶6} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶25, the Ohio Supreme Court restated the standard of review for a criminal manifest-weight challenge as follows:

The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. "When a court of appeals reverses

a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶7}** Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387. Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶8}** Primeau was convicted of murder, pursuant to R.C. 2903.02(A) and (B), which state:

(A) No person shall purposely cause the death of another * * *.

(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

**{¶9}** Primeau was also convicted of felonious assault, pursuant to R.C. 2903.11, which states in pertinent part that "[n]o person shall knowingly * * * [c]ause serious physical harm to another."

**{¶10}** The following evidence was adduced at trial.

{¶11} On March 11, 2011, Primeau arrived at the Fairview Hospital emergency room with his wife, Shinobu Higa ("Higa"), at approximately 9:30 p.m. Higa was admitted in critical condition, suffering from obvious signs of physical trauma. She was diagnosed with a perforation to her digestive tract, stomach, small intestine or colon, and was immediately intubated.

{¶12} Primeau told doctors that Higa, a Japanese national, had gone out the night before to see a man about her immigration status, and that she returned by bus to their apartment the following morning. Upon her return, Higa told him that she had been beaten and sexually assaulted. Primeau informed the doctors that he had been with her all day and that, although she did not want to go to hospital, he decided to bring her to the emergency room when her condition worsened.

{¶13} Police were called to the hospital in response to Higa's condition. Upon arrival, officers interviewed Primeau. He told them that Higa had left the night before and returned in the morning by bus, after having prostituted herself on Lorain Avenue and West 25th Street. Primeau told officers that Higa claimed to have been beaten by a black man. When Higa's condition worsened, Primeau brought her to the emergency room.

{¶14} Doctors performed surgery at approximately midnight on the night Higa was admitted to the hospital, in order to repair the perforation. After viewing her internal injuries, the surgeon determined that, based on the inflammation, the amount of fluid, and the color of the fluid, the perforation occurred within the last six hours.

{¶15} Nurse Marie Balcerski ("Balcerski") testified at trial that she had been treating Higa prior to the arrival of the police. Balcerski testified that she asked Higa, in the presence of nurse Hannah Horton ("Horton"), if she knew who had done this to her. In response, Higa nodded her head "yes." Balcerski then asked who had done this. Higa pointed to her ring-finger on her left hand, and then to the empty chair where Primeau had been sitting just moments before.

{¶16} Higa became agitated after indicating to Balcerski and Horton that Primeau had been her assailant. She began using her finger to spell words. Balcerski watched her spell the words "black man." When asked if that was who beat her, Higa nodded her head "yes." Higa later wrote on a piece of paper "my husband didn't do that."

{¶17} Det. Beverly Fraticelli ("Fraticelli") testified that Higa shook her head "no" when asked if her husband had done this to her. When offered pen and paper, Fraticelli testified that Higa wrote "black guy" in response to the question "who has done this to you?" When asked why she had been beaten, Higa wrote "he wanna ass sex but I say no." Due to Higa's inconsistent responses to questions regarding the identity of her assailant, Primeau was arrested.

{¶18} Nurse Elizabeth Pettit and nurse Alison Rerko examined Higa for sexual abuse and discovered substantial injuries. The rape kit was tested for DNA. Semen samples were taken from the anal sample and Higa's underwear. The semen and DNA samples were consistent with Higa and Primeau exclusively.

{¶19} On March 16, 2011, Higa died as a result of her injuries. An autopsy was performed and determined the cause of death to be homicide, due to the blunt impact to the abdomen that caused a perforation to her duodenum, part of the small intestine. The coroner's report also found that blunt trauma to her head, arms, and legs contributed to the cause of death.

{¶20} Detectives began investigating the conflicting accounts of Higa's assault. In the course of their investigation, they found no evidence to support Primeau's version of events. An investigation by RTA police did not reveal any evidence of Higa's presence on an RTA bus the morning of March 11 in the area of West 25th Street and Lorain, or en route to her apartment. RTA police Det. Pamela McGinty testified that there were no reports of a severely beaten woman on any bus in that vicinity. Video surveillance from a gas station near the bus stop closest to Higa's apartment did not show anyone matching her description exiting a bus on the morning of March 11.

{¶21} During a voluntary interview with police, Primeau stated that Higa's clothing from the night of March 10 and morning hours of March 11 was located in a blue hamper in their apartment. Police executed a search warrant for the apartment. Police discovered what they believed to be signs of a struggle. There was damage to the door and living room wall, stains on the bedspread, clumps of hair on the bedroom floor, blood on the mattress cover, a first aid kit in the kitchen, latex gloves and cotton balls in the bedroom, and blood on the bathroom floor. Police, however, did not find a blue hamper

or the clothing Higa was wearing when she sustained her injuries. The clothing was later discovered in the garbage dumpster outside the apartment building.

{¶22} A second search warrant was executed to obtain swabs from the evidence discovered during the first search of the apartment and to measure the holes in the door and wall. During the second search, police found a food receipt on the kitchen table, time-stamped March 11, 2011, 4:57 p.m., from the Giant Eagle grocery store in Rocky River.

{¶23} A third search warrant was executed for the vehicle Primeau drove to the hospital on March 11, 2011. Inside the car, police discovered a receipt for a withdrawal made at the Charter One Bank branch located near the Giant Eagle in Rocky River. The withdrawal was time-stamped March 11, 2011, 5:02 p.m. In addition, police found the parking lot receipt from the Fairview Hospital parking garage, time-stamped March 11, 2011, 9:37 p.m.

{¶24} Adam Rodeghiero ("Rodeghiero"), a good friend of Primeau's, testified at trial that he and Primeau spoke on the phone on March 11, 2011, just after 6:00 p.m. The phone call lasted approximately 40 minutes, during which time Primeau told him that Higa was nauseous and acting ill. Primeau asked Rodeghiero if he thought that Higa could be "faking being sick for attention or empathy or something along those lines. Or if she was really ill." Rodeghiero suggested that Primeau take Higa to the hospital. Rodeghiero testified that had Higa been assaulted, he would expect Primeau to have told him. Primeau never mentioned the assault to Rodeghiero.

**{¶25}** In addition, several neighbors in the apartment building testified at trial that they had heard arguing, loud noises, and screaming on numerous occasions coming from the apartment Higa and Primeau shared, including the night of March 10, 2011, and the day of March 11, 2011.

**{¶26}** Teressa Fiala ("Fiala") testified that she lives directly above the apartment shared by Higa and Primeau. Fiala began hearing a loud and angry male voice in the apartment below hers in the fall of 2010. In December 2010, she heard what she believed to be the sound of someone being struck, followed by the sound of a woman crying. Fiala called management and complained. In February 2011, Fiala again heard the sound of someone being struck, followed by a woman crying. Fiala testified that on March 11, 2011, she was working at home with headphones on when she heard loud pounding noises coming from the apartment below hers. She was so afraid that she locked her own sliding glass door, fearing that someone would enter her apartment.

**{¶27}** Nicholas Lovano ("Lovano") testified at trial about his encounters with Higa and Primeau at their apartment building. In his job as a pizza delivery driver, he brought pizza to Primeau and Higa approximately three times per month. He recalled observing bruises on Higa and marks on her body and face on multiple occasions.

**{¶28}** Detectives interviewed Primeau's ex-wife, Tiffany Redding ("Redding"), who testified at trial. Redding and Primeau were married from 2003 to 2009 and lived in Japan, where Primeau was stationed while in the Air Force. Redding testified that Primeau had been physically abusive to her during their marriage. She described being

beaten in the head so severely that she had scars. Redding described being kicked in the abdomen so violently that she required medical attention. She testified that initially Primeau withheld medical treatment but eventually agreed, only after she promised to lie about how she had been injured. The trial court overruled the defense's objection to her testimony.

{¶29} Dr. Warner Spitz ("Spitz") testified for the defense that in his expert opinion, the first set of surgeons could not have determined when the perforation to Higa's duodenum occurred. Spitz testified that surgeons could not have determined during the first surgery that the perforation occurred within the last six hours because the trauma to the abdomen and the actual perforation could have occurred at two separate times.

{¶30} Primeau argues that the State's case was based purely on circumstantial evidence and, therefore, his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. Proof of guilt may be made by circumstantial evidence, real evidence, and direct evidence, or any combination of the three, and all three have equal probative value. *State v. Nicely*, 39 Ohio St.3d 147, 529 N.E.2d 1236 (1988); *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492. Moreover, "[c]ircumstantial evidence and direct evidence inherently possess the same probative value and therefore should be subjected to the same standard of proof." *Jenks* at paragraph one of the syllabus. Indeed, "[c]ircumstantial evidence * * * may also be more certain, satisfying and persuasive than direct evidence." *State v. Lott*, 51 Ohio

St.3d 160, 555 N.E.2d 293 (1990). "'[C]ircumstantial evidence is sufficient to sustain a conviction if that evidence would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75, quoting *State v. Heinish*, 50 Ohio St.3d 231, 238, 553 N.E.2d 1026 (1990). In the instant case, the State presented satisfying and persuasive circumstantial evidence illustrating that Primeau was Higa's assailant.

{¶31} Furthermore, "[i]n reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness." *State v. Jackson*, 86 Ohio App.3d 29, 33, 619 N.E.2d 1135 (4th Dist.1993). "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Richey*, 64 Ohio St.3d 353, 363, 1992-Ohio-44, 595 N.E.2d 915.

{¶32} Therefore, after viewing the evidence in a light most favorable to the prosecution, we find sufficient evidence to establish, beyond a reasonable doubt, that Primeau committed murder and felonious assault. Moreover, based on the aforementioned facts and circumstances, we find that the convictions are not against the manifest weight of the evidence. We cannot say that the jury lost its way and created a manifest injustice in convicting Primeau.

{¶33} Accordingly, the ninth and tenth assignments of error are overruled.

<u>Search Warrants</u>

**{¶34}** In the first assignment of error, Primeau argues that the trial court erred when it denied his motion to suppress evidence that was illegally obtained through search warrants issued without the requisite probable cause.

**{¶35}** In reviewing a trial court's ruling on a motion to suppress, the reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. *State v. DePew*, 38 Ohio St.3d 275, 277, 528 N.E.2d 542 (1988); *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. *See State v. Curry*, 95 Ohio App.3d 93, 96, 641 N.E.2d 1172 (8th Dist.1994), citing *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). The reviewing court, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. *Id.*; *see also State v. Claytor*, 85 Ohio App.3d 623, 627, 620 N.E.2d 906 (4th Dist.1993).

**{¶36}** Primeau argues that the first search warrant was illegally obtained due to the omission of the allegation that Higa was beaten by a black man on West 25th Street and, in turn, the fruits of the search warrant, as well as the subsequent search warrants should be excluded. A search warrant containing deliberate falsehoods and/or reckless misstatements, where such falsehoods or misstatements are material to the finding of probable cause, will be invalidated. *State v. Hunt*, 22 Ohio App.3d 43, 488 N.E.2d 901 (8th Dist.1984). However, mere omissions do not have same effect. Primeau does not argue that the affidavit used in support of the initial search warrant contains any

deliberate falsehoods and/or reckless misstatements; therefore, there is no basis on which to find that the court lacked probable cause with which to grant the State's request. Furthermore, paragraph two of the officer's affidavit contains the information that Primeau claims was omitted.

{¶37} Moreover, we find that the magistrate had a substantial basis for concluding that probable cause existed with which to grant the warrant. In *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640 (1989), paragraph one of the syllabus, the Ohio Supreme Court established the standard of review on appeal of a magistrate's determination that probable cause existed to issue a search warrant:

> * * * [T]he duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, trial and appellate courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant.

{¶38} Within the four corners of the affidavit, it is clear that based on Primeau's own voluntary admission that Higa's clothing from the night of her alleged assault could be found in the apartment, the magistrate had probable cause to grant the search warrant for these and any other items of evidentiary value. Thus, the trial court did not err in denying the motion to suppress.

{¶39} Accordingly, the first assignment of error is overruled.

## Other Acts Evidence

{¶40} In the second assignment of error, Primeau argues that the trial court erred when it improperly allowed the State to present other acts evidence, in violation of

Evid.R. 404(B). In his third assignment of error, Primeau argues that the trial court erred when it permitted the State to offer testimony to establish alleged prior domestic abuse, in violation of Evid.R. 404(B). In his twelfth assignment of error, Primeau argues that the trial court erred when it allowed the State to present evidence of an alleged prior domestic violence call involving him and the victim, in violation of Evid.R. 404(A) and (B).

{¶41} Primeau argues that the "other acts" evidence, including testimonial evidence from his ex-wife, the pizza delivery man, the apartment neighbors, and the police did not fall under any of the Evid.R. 404 exceptions and thus, should have been excluded.

{¶42} Pursuant to Evid.R. 404(B), evidence of other acts that are wholly independent of the crime charged is generally inadmissible. *State v. Thompson*, 66 Ohio St.2d 496, 497, 422 N.E.2d 855 (1981). Trial court decisions regarding the admissibility of other-acts evidence under Evid.R. 404(B) are evidentiary determinations that rest within the sound discretion of the trial court. Appeals of such decisions are reviewed by an appellate court for an abuse of discretion. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶43}** Pursuant to Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove" a defendant's character as to criminal propensity. "It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* In *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975), the Ohio Supreme Court explained when other acts evidence is admissible pursuant to the "scheme, plan, or system" exception:    evidence of a defendant's scheme, plan, or system in doing an act is only relevant in two situations: (1) the other acts are part of one criminal transaction such that they are inextricably related to the charged crime, or (2) *a common scheme or plan tends to prove the identity of the perpetrator.* *Id.* at 72-73. *See also State v. Williams*, 195 Ohio App.3d 807, 2011-Ohio-5650, 961 N.E.2d 1203 ¶ 50 (8th Dist.).[1]   "Identity is in issue when the fact of the crime is open and evident but the perpetrator is unknown and the accused denies that he committed the crime." *State v. Ogletree*, 8th Dist. No. 94512, 2011-Ohio-819, ¶ 36, *appeal not accepted*, 129 Ohio St.3d 1409, 2011-Ohio-3244, 949 N.E.2d 1004, citing *State v. Smith*, 84 Ohio App.3d 647, 666, 617 N.E.2d 1160 (2d Dist.1992).

**{¶44}** The State argues that Redding's testimony and the evidence of other acts was admissible because it tended to show Primeau's scheme, plan, or system of physically abusing his wives and refusing to allow them medical treatment unless they agreed to lie

---

[1]   *Discretionary appeal allowed, State v. Williams*, 131 Ohio St.3d 1472, 2012-Ohio-896, 962 N.E.2d 803.

about the circumstances of their injuries, which tends to prove the identity of the perpetrator in the instant case.

> In *State v. Bey*, 85 Ohio St.3d 487, 1999-Ohio-283, 709 N.E.2d 484, certiorari denied, 528 U.S. 1049, 120 S.Ct. 587, 145 L.Ed.2d 488 (1999), the Ohio Supreme Court affirmed the trial court's decision allowing other acts evidence to show identity, finding that the other acts evidence established a "behavioral fingerprint" linking the appellant to the crime due to the common features. The Court noted that the deaths of the current and prior victims occurred under nearly identical circumstances: both victims were businessmen who were killed at their place of business, both died after being stabbed with a knife in the chest, both men had their trousers removed and their shoes were placed next to their bodies, and although both businesses were robbed, jewelry was left on each person. *Id.* at 491. The Court found that because the evidence demonstrated a similar method of operation, it was probative of identity. *Id.*

*Williams* at ¶ 55.

{¶45} In the instant case, the identity of the perpetrator is clearly a central issue. The State argues that, as in *Bey*, the injuries sustained by Redding and Higa occurred under nearly identical circumstances; both victims were married to Primeau, both were physically abused in the marital home, both suffered serious injuries to their abdomens, and both needed immediate medical attention that Primeau withheld until they agreed to

lie about how they sustained their injuries. Redding was married to Primeau from 2003 to 2009, near in time to the alleged assault of Higa.

{¶46} Furthermore, the testimony from the pizza delivery man that he had observed bruises on Higa on multiple occasions, and from the neighbors who heard yelling and loud noises from Higa and Primeau's apartment on multiple occasions, tended to prove the identity of the attacker in the instant case. Det. Thomas Harrington testified that he had responded to a December 2010 domestic abuse call from Higa at the apartment she shared with Primeau. Therefore, we find that the court did not err in admitting the testimonial evidence of Primeau's prior bad acts because it was offered for a valid purpose under Evid.R. 404(B).

{¶47} However, even if a court finds that the other acts evidence was offered for a valid purpose under Evid.R. 404(B), the court must still consider whether the evidence is substantially more prejudicial than probative; if so, then it must still be excluded because of its deleterious effects on an accused's right to a fair trial. *See State v. Matthews*, 14 Ohio App.3d 440, 471 N.E.2d 849 (8th Dist.1984); Evid.R. 403(A).

{¶48} There is no doubt that the "other acts" evidence was prejudicial. However, the trial court did not err in finding that the probative value of the "other acts" evidence outweighed any prejudicial effect. Thus, we find no abuse of discretion.

{¶49} Accordingly, the second, third, and twelfth assignments of error are overruled.

Medical Records

{¶50} In the fourth assignment of error, Primeau argues that the trial court erred when it allowed Tiffany Redding to testify without compelling the State to produce medical records proving alleged prior acts of domestic violence, and that such a discovery violation under Crim.R. 16 violated Primeau's due process rights.

{¶51} Crim.R. 16 requires the State to provide copies of items related to discovery for the defense. This rule applies to items obtained by or belonging to the State. The rule does not require the State to obtain items requested by the defense that the State does not already possess.

{¶52} Primeau argues that he was not allowed access to Redding's medical records. However, a review of the record shows that defense counsel raised this issue prior to jury selection, and the court granted him time to procure the records himself, agreeing to sign an affidavit in support if needed. Primeau has failed to show that the records were within the State's possession, custody, or control, and that the State withheld them from the defense.

{¶53} Primeau also argues that the State intentionally delayed the submission of Redding's written statement to police. Primeau fails to prove this allegation or to establish how he was prejudiced by the alleged delay.

{¶54} Thus, we find that Primeau has failed to show that his due process rights were violated by the State's failure under Crim.R. 16 to provide Redding's medical records, as he did not show that the records were in the State's possession at any time.

{¶55} Accordingly, the fourth assignment of error is overruled.

Rerko Opinion Testimony

{¶56} In the fifth assignment of error, Primeau argues that the trial court erred when it allowed a State witness, Nurse Allison Rerko ("Rerko"), to opine conclusions regarding the behavioral patterns of victims of domestic violence, in violation of Evid.R. 401 and 403.

{¶57} "A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion." *Scott v. Yates*, 71 Ohio St.3d 219, 221, 1994-Ohio-462, 643 N.E.2d 105. An expert witness must possess knowledge in the relevant subject area that is superior to an ordinary person, and may be "qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." Evid.R. 702(A) and (B).

{¶58} Primeau argues that Rerko's testimony exceeded her ability and qualifications as an expert witness due to her lack of a bachelor or advanced degree. He does not specifically argue that Rerko's testimony violated Evid.R. 702. Although Rerko was not declared an expert on the record, we find no error. *State v. Skinner*, 2d Dist. No. 11704, 1990 Ohio App. LEXIS 4178 (Sept. 26, 1990) ("[S]o long as the record indicates that the trial court did not abuse its discretion, we will not disturb a decision to allow a witness to offer expert opinion testimony simply because 'magic' words do not appear on the face of the record."); *see also State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 95.

{¶59} In the instant case, Rerko testified that she has been a registered nurse since 1998 and a sexual assault nurse examiner (SANE) since 2002. She is currently the SANE nurse coordinator at Fairview Hospital, and is also in charge of training nurses in the area of sexual assault and domestic violence. Rerko's testimony was within the scope of her expertise because she is a trained medical professional whose qualifications are in areas of domestic violence injuries and sexual assault. We find no abuse of discretion.

{¶60} Furthermore, we find the admission of Rerko's testimony regarding domestic abuse victims did not violate Evid.R. 401 or 403. Rerko testified regarding her examination of Higa on the date in question. She testified about domestic violence victims in general terms, including the "cycle of violence" experienced by most domestic abuse victims. She did not opine whether Higa was the victim of domestic abuse or sexual assault.

{¶61} The Ohio Supreme Court has recognized that the State may introduce testimony on the "cycle of violence" in its case-in-chief, provided that such testimony is relevant and helpful. *State v. Haines,* 112 Ohio St.3d 393, 2006-Ohio-6711, 860 N.E.2d 91, ¶ 44. The testimony was relevant to the State's argument that Higa's contradictory gestures and notes about her assailant were consistent with those of a victim of domestic violence and sexual assault.

{¶62} Rerko properly limited her testimony to the general characteristics of a victim suffering in a cycle-of-violence situation. She answered only hypothetical

questions regarding specific behaviors exhibited by women suffering from abuse. She never opined specifically about Higa or Primeau.

**{¶63}** Therefore, we find no abuse of discretion in admitting Rerko's testimony. Accordingly, the fifth assignment of error is overruled.

## Hearsay

**{¶64}** In the sixth assignment of error, Primeau argues that the trial court erred when it permitted Officer Richard Rutt ("Rutt") to testify to hearsay statements, in violation of Evid.R. 801.

**{¶65}** "[A] trial court's decision to admit or exclude evidence 'will not be reversed unless there has been a clear and prejudicial abuse of discretion.'" *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, quoting *O'Brien v. Angley*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490 (1980).

**{¶66}** Primeau argues that the trial court erred in allowing Rutt to testify regarding Higa's indication to Nurse Balcerski that Primeau was the assailant, and Higa's responses to Det. Fraticelli's questions about who beat her. The State argues that Rutt's testimony was admissible because it was offered to explain his conduct during the course of the investigation.

**{¶67}** Hearsay is "a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Out-of-court statements offered for reasons other than the truth are not hearsay. *State v. Freeman*, 8th Dist. No. 85137, 2005-Ohio-3480, ¶ 40,

citing *State v. Lewis*, 22 Ohio St.2d 125, 132-133, 258 N.E.2d 445 (1970). Generally, statements offered to explain a police officer's underlying reasons for conduct while investigating a crime are not hearsay. *Freeman*, citing *State v. Price*, 80 Ohio App.3d 108, 110, 608 N.E.2d 1088 (9th Dist.1992); *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). "The conduct to be explained should be relevant, equivocal and contemporaneous with the statements. * * * Additionally, such statements must meet the standard of Evid.R. 403(A)." *State v. Blevins*, 36 Ohio App.3d 147, 149, 521 N.E.2d 1105 (10th Dist.1987).

{¶68} A review of the transcript reveals that Rutt was testifying regarding his conduct in the course of the investigation and Primeau's subsequent arrest in light of the conflicting indications from Higa regarding her assailant. However, Rutt's testimony also established elements of the crime related to identity. *See State v. Gresh*, 5th Dist. No. 09-CAA-012-0102, 2010-Ohio-5814, ¶31 (when an officer relates out-of-court statements that establish the elements of the crime charged, the statements should not exceed that which is needed to establish a foundation for the officer's subsequent conduct). Thus, the court erred in allowing Rutt to testify to hearsay statements that established the elements of the crime in the instant case.

{¶69} We find this error, however, to be harmless. The main premise behind the hearsay rule is that the adverse party is not afforded the opportunity to cross-examine the declarant. In the instant case, the defense had the opportunity to cross-examine both declarants, nurse Balcerski and Det. Fraticelli. As Primeau correctly points out in his

brief, the trustworthiness of Rutt's statements was challenged and shown to contradict Fraticelli's testimony. Therefore, we find the court's error in allowing his testimony to be harmless.

{¶70} Accordingly, the sixth assignment of error is overruled.

Rutt Opinion Testimony

{¶71} In the seventh assignment of error, Primeau argues that the trial court erred when it permitted Officer Rutt to testify regarding his medical opinion of Primeau's physical appearance after he was arrested.

{¶72} As stated above, "a trial court's decision to admit or exclude evidence 'will not be reversed unless there has been a clear and prejudicial abuse of discretion.'" *Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, quoting *O'Brien*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490.

{¶73} Primeau argues that the trial court erred in admitting Officer Rutt's observations of Primeau's hand lacerations during the booking process, because Rutt has no medical expertise. The State argues that Rutt's testimony was admissible because it was his opinion. Evid.R. 701 states that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

{¶74} Under Evid.R. 701, courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified

under Evid.R. 702. *State v. McKee*, 91 Ohio St.3d 292, 2001-Ohio-41, 744 N.E.2d 737.

In *McKee*, the issue was whether a drug user could testify about the identity of drugs. The court stated that:

> Although these cases are of a technical nature in that they allow lay opinion testimony on a subject outside the realm of common knowledge, they still fall within the ambit of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue. These cases are not based on specialized knowledge within the scope of Evid.R. 702, but rather are based upon a layperson's personal knowledge and experience. *Id.* at 297.

**{¶75}** We find that Rutt's testimony fits into this classification. In this case, Rutt was testifying as a lay witness describing the photos of Primeau taken during the booking process. His description of the photos was based on his experience as a police officer, his previous investigations of assaults, and his perception of Primeau's lacerations at the time. Therefore, his testimony was properly admitted under Evid.R. 701.

**{¶76}** Accordingly, the seventh assignment of error is overruled.

<u>Right to Remain Silent</u>

**{¶77}** In his eighth assignment of error, Primeau argues that the trial court erred when it allowed Officer Rutt to render an opinion that Primeau's exercising his Fifth Amendment right to remain silent was unusual, "thus insinuating that his silence was telling and he must be, in fact, guilty."

**{¶78}** A thorough review of the record reveals that Rutt did not offer his opinion as to Primeau's guilt or innocence. Rutt merely stated that it is unusual for someone he arrests to remain quiet. He testified that when being placed under arrest, Primeau was

very calm, said nothing, and showed no emotion.   Neither Rutt nor the State made any mention of guilt.

{¶79} As stated in the previous assignment of error, pursuant to Evid.R. 701, Rutt's testimony about his experience in arresting people falls within the scope of the rule's requirement that a lay witness's opinion be rationally based on firsthand observations and helpful in determining a fact in issue.   Rutt's opinion was based upon his personal knowledge and experience.   *See McKee*, 91 Ohio St.3d 292, 2001-Ohio-41, 744 N.E.2d 737.   Therefore, his testimony was properly admitted under Evid.R. 701 and we find no abuse of discretion.

{¶80} Accordingly, the eighth assignment of error is overruled.

Videotape Interview

{¶81} In the eleventh assignment of error, Primeau argues that the trial court erred when it denied his motion to redact portions of the videotape interview that included irrelevant and inadmissible evidence.

{¶82} Again, "a trial court's decision to admit or exclude evidence 'will not be reversed unless there has been a clear and prejudicial abuse of discretion.'" *Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, quoting *O'Brien*, 63 Ohio St.2d 159, 163, 407 N.E.2d 490.

{¶83} Primeau argues that the trial court erred in admitting his videotape interview with police in its entirety, as opposed to a redacted version in which certain comments and questions were removed.   Primeau argues that officers made comments during the

course of the interview that were prejudicial. He cites no authority to support his argument.

{¶84} Evid.R. 403(A) states that, although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, or confusion of the issues, or of misleading the jury.

{¶85} After viewing the videotape in question, we find no error in admitting it into evidence in its entirety. We find that its probative value was not substantially outweighed by the danger of unfair prejudice.

{¶86} Accordingly, the eleventh assignment of error is overruled.

<u>Photographs</u>

{¶87} In the thirteenth assignment of error, Primeau argues that the trial court erred when it allowed the State to introduce photographs that were duplicative and gruesome.

{¶88} When considering the admissibility of photographic evidence under Evid.R. 403, the question is whether the probative value of the photographic evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *See State v. Tingler*, 31 Ohio St.2d 100, 103-104, 285 N.E.2d 710 (1972); *State v. Rahman*, 23 Ohio St.3d 146, 152, 492 N.E.2d 401 (1986). The admission or exclusion of such photographic evidence is left to the discretion of the trial court. *State v. Hill*, 12 Ohio St.2d 88, 232 N.E.2d 394 (1967), paragraph two of the syllabus; *State v. Wilson*, 30 Ohio St.2d 199, 203-204, 222, 283 N.E.2d 632 (1972). Accordingly, a trial court may reject

an otherwise admissible photo which, because of its inflammatory nature, creates a danger of prejudicial impact that substantially outweighs the probative value of the photo as evidence. Absent such danger, the photo is admissible.

{¶89} Primeau challenges the admission of five photos of the victim. These photos illustrated the testimony of the doctors, nurses, and police officers who observed Higa's injuries, and illustrated the body's condition as witnessed by the medical examiners. *See, e.g., State v. Hughbanks*, 99 Ohio St.3d 365, 2003-Ohio-4121, 792 N.E.2d 1081, ¶ 72.

{¶90} None of these photos is a duplicate or repetitive. Each depicts a different view of the victim's body and her injuries. Four of the five photos show bruising on Higa's body as seen in the hospital. The remaining photo was taken of the victim's entire body prior to her autopsy. We find the value of each of the four hospital photos outweighs any prejudicial impact. We find the gruesome nature and prejudicial impact of the fifth photo is also outweighed by its probative value regarding the entirety of Higa's injuries. Thus, we find no abuse of discretion in the court's admitting the photos.

{¶91} Accordingly, the thirteenth assignment of error is overruled.

{¶92} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having

been affirmed, any bail pending appeal is terminated.  Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
COLLEEN CONWAY COONEY, JUDGE

JAMES J. SWEENEY, P.J., and
EILEEN A. GALLAGHER, J., CONCUR