[Cite as *State v. Thompson*, 2014-Ohio-1056.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99846**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JOHNNY THOMPSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART, MODIFIED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-12-562669-A

**BEFORE:** Rocco, P.J., E.A. Gallagher, J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** March 20, 2014

**ATTORNEY FOR APPELLANT**

Myron P. Watson
323 W. Lakeside Avenue
Suite 420
Cleveland, OH   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By: Andrew J. Santoli
        Assistant County Prosecutor
Justice Center
1200 Ontario Street
Cleveland, OH 44113

KENNETH A. ROCCO, P.J.:

{¶1} Defendant-appellant Johnny Thompson appeals from his sentence for kidnapping with a sexual motivation specification, rape, gross sexual imposition, and attempted felonious assault. Thompson argues that the trial court erred in its evidentiary rulings, that he received ineffective assistance of counsel, and that the trial court erred in denying his motion for judgment of acquittal on the attempted felonious assault charge. We conclude that the trial court did not abuse its discretion in making its evidentiary rulings. We further conclude that Thompson did not receive ineffective assistance of counsel. Although the evidence was insufficient to support the attempted felonious assault conviction, we determine that the evidence did support a conviction for the lesser included offense of simple assault. Accordingly, we affirm in part and modify in part the trial court's final judgment.

{¶2} Thompson was convicted following a jury trial. The victim, S.D., was seven years old at the time of the offense, and she knew Thompson as a friend of her mother. S.D. testified that on the day of the attack, Thompson was at her house. S.D. accompanied Thompson to McDonald's. They brought the food back home, and S.D. went back into her bedroom to eat. Later, S.D. was in her mother's bedroom watching television. Thompson and S.D.'s mother were in the living room down the hall. S.D. heard Thompson tell S.D.'s mother that he had to use the bathroom. But instead of using the bathroom, Thompson entered S.D.'s mother's room. S.D. testified that Thompson told her to pull her pants down, and when she refused, he pulled down her pants, put his

hands on the inside of her pants, and put his finger in her rectum. He also hit her on the head leaving a mark on her forehead area. Shortly after the incident, Thompson left. S.D. walked into the living room, crying. S.D.'s mother asked her what was wrong, and S.D. told her what Thompson had done.

{¶3} S.D.'s mother testified that she had known Thompson for about thirty years and that their relationship was only sexual. On the day of the incident, Thompson came over and they sat in the living room and drank alcohol. Eventually, S.D.'s mother asked Thompson to take S.D. to McDonald's. After they returned home, S.D. went in her bedroom to eat her food, and Thompson and S.D.'s mother stayed in the living room, talking and listening to music. Thompson got up to use the bathroom. About five or six minutes later, he returned to the living room, sat down for a couple of minutes and then left.

{¶4} S.D.'s mother testified that after Thompson left, S.D. came into the living room trembling, with watery eyes and a strange look on her face. After hearing what S.D. told her, S.D.'s mother contacted a neighbor and then called 911. An ambulance came to take S.D. to the hospital to be examined.

{¶5} Nurse Kathleen Hackett testified next. Hackett is a registered sexual assault examination nurse ("SANE"), and she examined S.D. at the hospital. S.D. told Hackett about the sexual assault, explaining that she was told to pull down her pants and to bend over, and that she was touched on her butt. S.D. told Hackett that a man named "Johnny" was the perpetrator.

{¶6} Hackett measured S.D.'s injuries using a magnifying instrument called a colposcope. Hackett discovered a 1.8 millimeter bright red circular marking on S.D.'s hymen. Hackett determined that it is not normal to have a bright red mark on the hymen and that the injury could be consistent with a scratch. Hackett also testified that the anal and vaginal areas are in close proximity to one another and that a child may not be able to differentiate between touching the anal or vaginal areas on her body. Hackett determined that the type of redness she observed would be visible only within 12 hours of the occurrence because the young child's hymen is smooth and heals rapidly. Hackett stated that her observations of S.D.'s injuries were consistent with the description of sexual assault that S.D. reported. Hackett also testified that she has conducted many sexual assault examinations where a child was penetrated in the vagina or anal cavity and there was no evidence of injury.

{¶7} Lindsey Pruneski, a forensic biologist with the Bureau of Criminal Investigations ("BCI") also testified. Pruneski received S.D.'s rape kit and tested for the presence of semen and amylase. Amylase is a component found in a person's bodily fluids, including saliva, blood, sweat, and urine. Amylase was found on the crotch area of S.D.'s underwear. Pruneski forwarded the underwear and other samples from the rape kit for examination by the forensic DNA unit.

{¶8} Lynda Eveleth is a forensic scientist with the DNA unit of the BCI. Eveleth testified that she found only S.D.'s DNA on the labial and anal swabs from the rape kit.

But Eveleth found additional peaks on S.D.'s underwear sample that were inconsistent with S.D.'s DNA profile, so she sent the sample to another BCI lab for further testing.

{¶9} Halle Garofalo, a forensic scientist with the BCI, testified that she conducted a YSTR test on the underwear sample. YSTR is DNA testing on the Y chromosome that is present only in males. This test can ignore female DNA and examine only male DNA. After performing the test on the underwear sample, Garofalo determined that the Y chromosome was present on the underwear and that it was consistent with Thompson's Y chromosome profile. She testified that this was one of the stronger profiles that she had ever generated and that it was more likely than not to have resulted from primary contact. Primary contact is direct skin contact to an item.

{¶10} Detective Michael Kovach, who worked in the Sex Crimes and Child Abuse Unit on the date of the incident, testified that he was assigned to the instant case. Det. Kovach spoke to the social worker from Children and Family Services who was assigned to the case. The social worker verified to Kovach that S.D.'s disclosures to the social worker were consistent with the statement she made in the original police incident report. Kovach also testified that S.D.'s statements to him were consistent with the statements made in the police incident report.

{¶11} Thompson was the sole witness for the defense. He testified that he had come over to see if he could engage in sexual relations with S.D.'s mother. He did not expect that S.D. and her brother would be home from school early that day. After realizing that he would not be having sex, Thompson planned to leave, but S.D.'s mother

asked him to take S.D. to McDonald's to get dinner. Thompson agreed. They went to McDonald's and brought the food back. S.D. took her food to her bedroom to eat. Thompson stated that he stayed for ten minutes more and then he left the house with no problems. He testified that he never got up to go to the bathroom while in the house that day.

{¶12} Following his conviction, Thompson filed his notice of appeal from the trial court's entry of final judgment. He presents five assignments of error for review.

> I. The trial court erred when it allowed the state to introduce a portion of S.D.'s medical records in order to show an injury unrelated to a rape charge which unduly prejudiced Thompson and violated his right to due process of law.

> II. The trial court erred in allowing the SANE nurse to opine that the vaginal injury could have occurred through unlawful sexual conduct through attempted anal penetration in violation of Evid.R. 702 and 703 and in violation of Thompson's due process rights.

> III. The trial court erred when it denied Thompson's Crim.R. 29 motion for judgment of acquittal on the charge of attempted felonious assault.

> IV. Thompson's defense counsel failed to provide effective assistance because he failed to object to the admission of purported out of court hearsay statements made by S.D. but testified to by S.D.'s mother.

> V. The trial court erred when it allowed the state to introduce a portion of medical records showing an injury unrelated to a rape charge which unduly prejudiced Thompson and violated Thompson's right to due process of law.

{¶13} We consider the assignments of error out of order for ease of discussion. We overrule the second, first, fifth, and fourth assignments of error. We sustain the third assignment of error.

**{¶14}** In his second assignment of error, Thompson argues that the trial court erred in allowing the SANE nurse, Hackett, to offer opinions about S.D.'s injuries. Thompson asserts that the evidence was expert opinion evidence that did not comply with the requirements found in Evid.R. 702 and 703. We disagree.

**{¶15}** "'A ruling concerning the admission of expert testimony is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion.'" *State v. Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 57, quoting *Scott v. Yates*, 71 Ohio St.3d 219, 221, 643 N.E.2d 105 (1994). An expert witness is one who "possess[es] knowledge in the relevant subject area that is superior to an ordinary person." *Id.* The witness may be "'qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony." *Id.*, quoting Evid.R. 702(A) and (B).

**{¶16}** In *State v. Primeau*, we found no error where a SANE nurse with similar qualifications to Hackett's offered similar testimony in a case involving domestic violence and sexual assault. *Id.* at ¶ 59. In *Primeau*, as in the instant case, the nurse was not declared an expert on the record. *See id.* at ¶ 58, citing *State v. Skinner*, 2d Dist. Montgomery No. 11704, 1990 Ohio App. LEXIS 4178 (Sept. 26, 1990) ("[S]o long as the record indicates that the trial court did not abuse its discretion, we will not disturb a decision to allow a witness to offer expert opinion testimony simply because 'magic' words do not appear on the face of the record."). We concluded that the nurse's "testimony was within the scope of her expertise because she is a trained medical

professional whose qualifications are in areas of domestic violence injuries and sexual assault." *Id.*

{¶17} Similarly, in the instant case, Hackett testified that she had worked for Rainbow Babies and Children's Hospital for two and a half years, and that she had worked as a clinical nurse for over thirty years. Hackett had performed over 120 exams of children where sexual abuse was reported. She also outlined the extensive training that she underwent in order to become a SANE nurse. We find no error in allowing Hackett to offer expert testimony.

{¶18} Thompson also argues that the trial court erred in permitting Hackett to testify that S.D.'s vaginal injuries were consistent with her having been anally penetrated, due to the size of a man's hands and the small distance between the anal and vaginal area of a seven-year-old child. According to Thompson, Hackett was not permitted to testify as such without first measuring Thompson's hands and measuring S.D.'s vaginal and anal areas. Essentially, Thompson is arguing that Hackett's testimony did not comport with Evid.R. 702(C) and 703. Evid.R. 702(C) requires that the expert "witness' testimony is based on reliable scientific, technical, or other specialized information * * *." Under Evid.R. 703 "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing."

{¶19} These rules do not require that Hackett conduct the kind of measurements suggested by Thompson. Hackett was basing her testimony on "specialized information"

that she had acquired from conducting more than 120 exams of children where sexual abuse was reported. Hackett's opinion was based on facts and data that she perceived during the course of her examination of S.D. and on her past experiences examining other children.

{¶20} Thompson also argues that Hackett could not render her testimony because she had no information or statements from S.D. that the vaginal injury was caused by Thompson's using his finger to enter her vaginally. But the point of Hackett's testimony was that the type of vaginal injury that was discovered could be consistent with the type of sexual assault reported by S.D. Accordingly, this argument is nonsensical.

{¶21} Hackett's testimony comported with Evid.R. 702 and 703. Accordingly, the trial court did not err in allowing Hackett to testify and we overrule the assignment of error.

{¶22} Because Thompson's first and fifth assignment of error raise the same argument, we consider them together. Thompson asserts that the trial court erred in allowing the state to introduce a portion of S.D.'s medical records. According to Thompson, these medical records were inadmissible under Evid.R. 401 and 403 because they were not relevant to any of the charges against him and they were unfairly prejudicial.

{¶23} A trial court has broad discretion in rendering evidentiary rulings and we will not reverse such a ruling absent an abuse of discretion resulting in prejudicial error. *State v. Toudle*, 8th Dist. Cuyahoga No. 98609, 2013-Ohio-1548, ¶ 12.

**{¶24}** Evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "'Generally speaking, the question of whether evidence is relevant is ordinarily not one of law but rather one which the trial court can resolve based on common experience and logic.'" *State v. Ford*, 8th Dist. Cuyahoga No. 90834, 2008-Ohio-5471, ¶ 28, quoting *State v. Lyles*, 42 Ohio St.3d 98, 99, 537 N.E.2d 221 (1989).

**{¶25}** Thompson argues that the portion of the medical records indicating redness in S.D.'s vaginal area was not relevant to the question of whether S.D. was anally raped. As discussed earlier, Hackett testified that the vaginal injuries set forth in the medical record were consistent with a fingernail scraping or touching around S.D.'s vaginal area. Further, Hackett testified that due to the small structure of a seven-year-old child, the vagina and anus are in close proximity, meaning such an injury could be sustained if a man stuck his hands into a child's vaginal – buttock region. For these reasons, the trial court could logically determine that this portion of the medical records was relevant to the question of whether Thompson anally raped S.D. using his finger.

**{¶26}** Thompson also argues that, even if relevant, this evidence was still inadmissible because it violated Evid.R. 403. Under this rule, evidence must be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Again, Thompson relies on his assertion that vaginal redness is not probative of whether S.D. was anally raped,

and so such evidence must be unfairly prejudicial. As we have just explained, Hackett testified that the injury in the medical record could be connected to the anal rape charge. Accordingly, the evidence was probative, and was not unfairly prejudicial. We overrule the assignments of error.

{¶27} In his fourth assignment of error, Thompson argues that his defense counsel provided ineffective assistance by failing to object to the admission of out of court hearsay statements made by S.D. but testified to by S.D.'s mother. We conclude that, even if Thompson's trial counsel was deficient, Thompson suffered no prejudice from this deficiency. Accordingly, we overrule the assignment of error.

{¶28} A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate ineffective assistance of counsel, a defendant must satisfy both parts of a two-prong test. *Id.* at 687. The first prong requires that the defendant show that his trial counsel's performance was so deficient that the attorney was not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution. *Id.*

{¶29} Under the second prong, the defendant must establish that counsel's "deficient performance prejudiced the defense." *Id.* We determine prejudice by analyzing whether "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Reasonable probability" is defined as probability sufficient to undermine confidence in

the outcome. *Id.* The failure to prove either prong of the *Strickland* test is fatal to a claim of ineffective assistance. *Id.* at 697.

{¶30} Thompson argues that his trial counsel was deficient in failing to object to the portion of the mother's testimony concerning what S.D. had told her following the attack. According to Thompson, the mother's testimony was inadmissible hearsay under Evid.R. 801. Hearsay is "a statement, other than one made by the declarant while testifying at a trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). The state argues that this portion of the mother's testimony was admissible under the excited utterance exception.

{¶31} We need not resolve this debate, because even if the testimony was inadmissible hearsay, and even if Thompson's trial counsel was deficient in failing to object to the testimony, Thompson was not prejudiced by the deficiency. "The main premise behind the hearsay rule is that the adverse party is not afforded the opportunity to cross-examine the declarant." *Primeau*, 8th Dist. Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 69. In *Primeau*, we found harmless error where the defense had the opportunity to cross-examine the declarant. *Id.* Similarly, in the instant case, S.D. testified and was subject to cross-examination.

{¶32} Furthermore, even without this portion of the mother's testimony, there was ample other evidence supporting Thompson's conviction, including S.D.'s testimony, the remaining non-hearsay testimony from the mother, Hackett's testimony, Det. Kovach's testimony, the medical report, and the DNA evidence. Accordingly, we

cannot say that there is a reasonable probability that but for counsel's error, the result of the proceeding would have been different. Accordingly, we overrule the assignment of error.

{¶33} In his third assignment of error, Thompson asserts that the trial court erred in denying his Crim.R. 29 motion for judgment of acquittal on the felonious assault charge. Under Crim.R. 29 a trial court must render a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for the offense. When reviewing a trial court's decision regarding a Crim.R. 29 motion, we apply the same standard of review that applies to a sufficiency of the evidence challenge. *State v. Lowe*, 8th Dist. Cuyahoga No. 99176, 2013-Ohio-3913, ¶ 11. Our task is to view the evidence in a light most favorable to the prosecution and to determine whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶34} Thompson was found guilty of attempted felonious assault under R.C. 2923.02 and 2903.11(A)(1). "Attempted felonious assault is committed when a person knowingly attempts to cause serious physical harm to another." *State v. Stafford*, 8th Dist. Cuyahoga No. 75739, 2000 Ohio App. LEXIS 912, *10 (March 9, 2000), citing R.C. 2903.11 (A)(1); R.C. 2923.02. "Serious physical harm" is defined as:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
> (b) Any physical harm that carries a substantial risk of death;
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

**{¶35}** Thompson argues that there was insufficient evidence to prove that he intended to cause serious physical harm. We agree. S.D. testified that Thompson hit her once on the head. The photographs that were admitted into evidence show a bruised area on S.D.'s head. No medical treatment was required. There was no evidence tending to show that S.D. would be permanently incapacitated or disfigured, nor that she underwent substantial pain and suffering as a result of this injury.

**{¶36}** Further, there is no evidence that Thompson was trying to cause S.D. serious physical harm, but that he was prevented from doing so because of an intervening circumstance. For example, in *Stafford*, the defendant used both his hands to apply pressure to the victim's chin and nose as he sat on her chest. The defendant did not release the victim until police forced their way into the apartment. We concluded that a reasonable factfinder could have concluded that the defendant intended to asphyxiate the victim. *Stafford* at *12. In that case, but for the intervention of others, the defendant's conduct would have resulted in serious physical harm.

**{¶37}** In contrast, in the instant case, there were no intervening circumstances preventing Thompson from carrying out the assault, and yet, his conduct did not cause S.D. serious physical harm. We conclude that no rational trier of fact could have found

that the essential elements of attempted felonious assault were proven beyond a reasonable doubt. Accordingly, the trial court erred in denying Thompson's Crim.R. 29 motion.

**{¶38}** But rather than overturn the conviction, we modify the conviction to simple assault. "[I]t is well established that this court has the authority to reduce a conviction to that of a lesser included offense when it is supported by the record, rather than ordering an acquittal or a new trial." *State v. Addison*, 8th Dist. Cuyahoga No. 96514, 2012-Ohio-260, ¶ 32, quoting *State v. Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759, 948 N.E.2d 454, ¶ 35 (8th Dist.). Simple assault is a lesser-included offense of felonious assault. *Id.* at ¶ 34. We conclude that the record contains sufficient evidence to support a conviction for simple assault in violation of R.C. 2903.13(A) ("No person shall knowingly cause or attempt to cause physical harm to another * * *."). Accordingly, we modify Thompson's conviction of attempted felonious assault to a conviction of simple assault in violation of R.C. 2903.13(A), and we remand for sentencing.

**{¶39}** The trial court's judgment is affirmed in part, modified in part, and remanded. The trial court's judgment is modified to reduce the conviction for attempted felonious assault under R.C. 2923.02 and 2903.11(A)(1) to a violation for simple assault under R.C. 2903.13(A). The case is remanded for the limited purpose of sentencing consistent with the conviction, as modified.

It is ordered that appellant and appellee split the costs taxed herein.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, PRESIDING JUDGE

EILEEN A. GALLAGHER, J., and
MARY EILEEN KILBANE, J., CONCUR