JOURNAL ENTRY AND OPINION
{¶ 1} James Corbin appeals from a judgment of conviction entered after a bench trial before Judge Christine T. McMonagle. He claims that his waiver of jury trial was invalid, and that his convictions on two counts of rape[1] and one count of endangering children[2] must be reversed because the judge erred in allowing evidence that unfairly bolstered the credibility of the alleged victim. We affirm.
 {¶ 2} On August 27, 2002, then thirty-six-year-old Corbin was indicted on ten counts of rape, ten counts of kidnapping,[3] each with a sexual motivation specification,[4] two counts of intimidation,[5] and one count of endangering children, all of which related to allegations that he compelled his girlfriend's fourteen year-old daughter, J.F.,[6] to have sex with him on several occasions between May 2002 and July 2002. Corbin executed a jury waiver, and trial was held.
 {¶ 3} J.F. testified that, at the time of the incidents, Corbin had lived with her mother and brothers in their East Cleveland apartment for over two years. She claimed that, in May of 2002, he told her that he knew she had allowed a boyfriend to sneak into the apartment against her mother's orders, and that he had a photograph of her, posing naked, which had been taken by the boyfriend. J.F. feared her mother would beat her if she learned of her waywardness, pleaded with Corbin not to tell, but refused his request for sex in exchange for his silence. She then stated that, despite her refusal, he followed her upstairs and began making advances, which she tried to ignore, but he eventually forced himself on her.
 {¶ 4} She testified that he physically forced himself on her several more times in the ensuing months, culminating in a final incident on July 1, 2002. At that time Corbin claimed to have knowledge that she had been with a boyfriend while visiting her father, and repeated his threats to tell her mother of her behavior. He again used physical force to accomplish his purpose but, nevertheless, told J.F.'s mother that she had a male visitor while she was at her father's house. She claimed at that point she had no reason to continue keeping Corbin's conduct secret, and she told her mother about the rapes.
 {¶ 5} J.F.'s mother kicked Corbin out of the house, but she did not contact police, and over the next several days J.F. recanted her allegations twice, only to restate them after each denial. This confusion resulted in Corbin being allowed to return to the home on two occasions, only to be kicked out again after J.F. restated the allegations.
 {¶ 6} Her mother still did not contact police, but Myra McGlin, a social worker with the Cuyahoga County Department of Children Family Services, visited the home to question J.F. after receiving an anonymous tip concerning the rapes. McGlin was involved with the family because the children had been removed from the mother's custody, and they had only been returned to her on May 3, 2002, shortly before the alleged rapes began. J.F. told McGlin that Corbin had raped her, and McGlin contacted police, who interviewed the girl and arrested Corbin on the charges.
 {¶ 7} The State presented the testimony of J.F., McGlin, and East Cleveland Police Detective Arthur Hardee, who testified that he interviewed J.F. after she made the rape allegations. After the prosecution presented its case, the judge directed a verdict of acquittal on eight of the ten rape counts, all ten counts of kidnapping, and both counts of intimidation.
 {¶ 8} Corbin presented four witnesses in his defense, including his sister, two of his friends, and one of J.F.'s boyfriends. Corbin's sister testified to his reputation in the community, and J.F.'s boyfriend denied taking a nude photograph of her. Corbin's friends testified that they went motorcycle riding with him, and both stated that he often took J.F. for rides, that she enjoyed the rides, and that she became upset one day in July 2002, when Corbin took her mother for a ride instead of her.
 {¶ 9} The judge found Corbin guilty of the two remaining counts of rape, and guilty of endangering children. She sentenced him to concurrent seven-year prison terms for the rapes, and a concurrent six-month jail term for the misdemeanor count of endangering children. She informed him that he would be placed on post-release control after his prison term ended, and she adjudicated him a sexually oriented offender. Corbin states two assignments of error, which are included in an appendix to this opinion.
 ADMISSION OF EVIDENCE {¶ 10} He first argues that the judge improperly allowed evidence that bolstered J.F.'s credibility, including evidence that suggested she had passed a polygraph examination, and evidence that Detective Hardee interviewed her at length and found that her story remained consistent in its details. We review a judge's decision on whether to admit evidence for abuse of discretion,[7] and we give further deference to a judge's decision when the evidence is introduced in a bench trial.[8] Unless the record indicates otherwise, the judge is presumed to have considered only admissible evidence.[9]
 {¶ 11} During cross-examination, J.F. was asked why the police interviewed her for over six hours when she initially reported the rapes. She stated that, among other time-consuming procedures, she was given a polygraph test during that time. On redirect, the prosecutor asked the following questions:
 {¶ 12} "Q. You said on questioning from defense counsel thatyou went to the police station, right?
 {¶ 13} "A. Right.
 {¶ 14} "Q. And they gave you a lie detector test?
 {¶ 15} "A. Yes.
 {¶ 16} "Q. And your case is still here?
 {¶ 17} "A. Yes.
 {¶ 18} Corbin claims the prosecutor's questions inappropriately bolstered J.F.'s credibility by suggesting that she passed the polygraph exam, but the State counters that he was not prejudiced because the judge did not rely on this testimony in making her determination. When the judge announced her verdict, she acknowledged that J.F.'s credibility was central to the prosecution's case, and she stated that she found her testimony credible because Detective Hardee had testified that her claims remained consistent throughout the lengthy interview, and because her testimony was consistent with that of McGlin, who testified to details of the rapes that J.F. disclosed to her.[10] The judge also stated that she was not swayed by Corbin's defense, which attempted to suggest that J.F. manufactured the rape allegations because she was upset at not being taken for a motorcycle ride.
 {¶ 19} Under these circumstances, we do not find that Corbin was prejudiced by any improper suggestion that J.F. passed the polygraph test. We note that he did not object to the prosecutor's question at trial — his only objection concerning the polygraph came after the prosecutor asked J.F. if anyone else was given a lie detector test. Therefore, we can grant relief on this issue only if the questioning amounts to plain error.[11] Although the prosecutor's suggestion was improper, the evidence was heard by a judge who specifically relied on other factors when assessing J.F.'s credibility. Because we do not find that the error seriously affected the fairness of the proceedings, the plain error standard is not satisfied.[12]
 {¶ 20} Corbin also argues that Detective Hardee unfairly bolstered J.F.'s credibility when he testified that her statement remained consistent throughout a lengthy interview process at the police station. On direct exam, the officer stated, without objection, that J.F. "was very consistent with her answers from start to finish." On cross-examination, he was again questioned about the length of the interview, and he testified that such interviews are conducted "to make sure that we couldn't find any inconsistencies in her statements or answers." On redirect, the prosecutor referred to that testimony and asked if any inconsistencies were found. Corbin's objection to the question was overruled, and Detective Hardee stated that no inconsistencies were found.
 {¶ 21} Corbin contends that the judge erred in overruling his objection, and that the error is prejudicial because she specifically relied on the officer's testimony when assessing J.F.'s credibility. This argument is tenuous because Corbin failed to object to that testimony on direct exam, he allowed the officer to discuss the issue on cross-exam without moving to strike any of his answers as not responsive, and he objected only when the prosecutor revisited the issue on redirect. Therefore, even if the testimony was erroneously admitted, the error was invited.[13] Corbin's questioning on the issue opened the door to further examination of the detective about his interview with J.F., including questions concerning the consistency of her statements.[14]
 {¶ 22} Because the record shows that Corbin invited Detective Hardee's testimony about the consistency of J.F.'s statements, we are again able to grant relief only if we find plain error, which we are not prepared to find because Corbin has neither argued nor shown that his conviction was the result of obvious errors that substantially affected the outcome at trial.[15] We are cognizant of the fact that the judge found J.F.'s testimony credible because of supporting testimony from McGlin and Detective Hardee, and that there are significant questions about whether either witness's testimony should have been admitted over proper objection. Nevertheless, we find the issues raised too complicated to be resolved on the record and argument presented. The first assignment is overruled.
 JURY WAIVER {¶ 23} Corbin next claims the judge erred in holding a bench trial because his jury waiver was not executed in strict compliance with R.C. 2945.05. Specifically, he claims the waiver is invalid because it was not signed in open court, and because the judge did not journalize her acceptance of the waiver until after trial. We reject both arguments because neither claimed defect is sufficient to invalidate the jury waiver.
 {¶ 24} Even though Corbin did not sign the waiver in the judge's presence, he acknowledged his signature and his waiver in open court. R.C. 2945.05 does not require a defendant to complete the act of signing the waiver in open court; the waiver is valid if the defendant acknowledges his signature and expresses his understanding of the waiver.[16]
 {¶ 25} The judge specifically asked Corbin if the signature on the waiver document was his, and she verified the fact with the defense attorney, who witnessed the signature. She then engaged Corbin in a discussion of his right to a jury trial, and satisfied herself that he understood the right he was waiving. Therefore, the judge complied with R.C. 2945.05 in accepting the jury waiver.
 {¶ 26} Corbin also claims the waiver is invalid because the judge did not journalize her acceptance of the waiver until after trial. Both the waiver document and a journal entry noting the waiver's filing bear file stamps dated November 4, 2002, the date trial began. On November 13, 2002, the judge filed a journal entry that stated her acceptance of the waiver, and it is this document that Corbin claims was untimely filed.
 {¶ 27} Courts have previously ruled that a written jury waiver need not be filed prior to trial, so long as the evidence shows it was executed and acknowledged in open court prior to trial.[17] It follows that the judge's acceptance of the waiver also need not be journalized prior to trial, so long as the record shows that the waiver was validly considered and accepted before trial. The transcript of proceedings shows that Corbin executed the waiver and validly acknowledged it in open court on November 4, 2002, before trial began. The same portion of the transcript shows the judge accepted Corbin's valid waiver at the same time. Therefore, the waiver is not invalidated by the fact that a journal entry accepting it was not filed until November 13, 2002. The second assignment is overruled.
 {¶ 28} Judgment affirmed.
 APPENDIX — ASSIGNMENTS OF ERROR "I. James Corbin was denied his constitutional right to a fairtrial before an impartial fact finder by the repeated admissionof evidence which improperly buttressed the credibility of thestate's principal witness."
 "II. The trial court was without jurisdiction to conduct abench trial, because the jury waiver in the case at bar was notexecuted in strict compliance with the statutory requirements."
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Karpinski, J., Concur.
[1] R.C. 2907.02.
[2] R.C. 2919.22.
[3] R.C. 2905.01.
[4] R.C. 2941.147.
[5] R.C. 2921.04.
[6] J.F. turned fourteen during the time period involved, so that some of the alleged rapes actually occurred while she was thirteen.
[7] McClintock v. Fluellen, Cuyahoga App. No. 82795, 2004-Ohio-58, at ¶ 26.
[8] State v. Fautenberry, 72 Ohio St.3d 435, 439,1995-Ohio-209, 650 N.E.2d 878.
[9] Id.
[10] A hearsay objection to McGlin's testimony was overruled, and Corbin has not challenged the ruling on appeal.
[11] State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240.
[12] Id.
[13] State v. McBooth, Cuyahoga App. No. 82811, 2004-Ohio-1783, at ¶ 21-22; State v. Betts, Pickaway App. No. 02CA26, 2004-Ohio-818, at ¶ 11.
[14] Id.; State v. Settles (Sept. 30, 1998), Seneca App. No. 13-97-50.
[15] Barnes, supra.
[16] State v. Franklin, Cuyahoga App. No. 81426, 2003-Ohio-2649, at ¶ 12-13.
[17] Id., at ¶ 15-17.