JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Jorge Ortiz, appeals his convictions for aggravated robbery and felonious assault. For the reasons set forth below, we affirm.
 {¶ 2} In 2006, a Cuyahoga County Grand Jury jointly indicted Ortiz and his co-defendant, Emily Ashley, in a multi-count indictment consisting of one count of aggravated burglary, one count of aggravated robbery, two counts of felonious assault, and one count of attempted murder. Ashley entered into a plea, which required her to testify against Ortiz. Ortiz pled not guilty and the matter proceeded to a jury trial where the following evidence was presented.
 {¶ 3} The victim and Emily Ashley lived together in an apartment located at 3410 Daisy Avenue, Cleveland, Ohio. At the time of the assault, Ashley was the victim's girlfriend. Ashley admitted that she was addicted to crack cocaine and alcohol.
 {¶ 4} On January 3, 2006, Ashley and Ortiz, who was Ashley's former boyfriend, imbibed in alcohol and indulged in crack cocaine with Ashley's neighbor, Alve Carter, who lived across the hallway. It is undisputed that in the early morning hours of January 4, 2006, Ashley asked Ortiz to assault the victim and steal his money so they could purchase more drugs. In his statement to the police Ortiz stated that he refused her request.
 {¶ 5} According to Ashley, shortly after she told Ortiz of her plan, he left Carter's apartment for about 15 minutes. She then heard a thumping noise *Page 2 
emanating from the victim's bedroom. Ortiz returned to the apartment red in the face as if he had been exerting himself. Ashley stated that when she checked on the victim, she discovered he had been seriously injured and called for an ambulance. The following day, Ashley told her landlord that "[i]t was not supposed to happen that way. * * * He was just supposed to hurt him or scare him. He wasn't supposed to kill him."
 {¶ 6} Alve Carter testified that both Ashley and Ortiz were in her apartment that night drinking and playing cards. She did not hear Ashley ask Ortiz to beat the victim. However, she noticed that after Ortiz left the room to use the bathroom in the hallway she heard thumping noises coming from the victim's apartment. She told Ashley to check to see what happened as it sounded like the dog fell down the steps. As she opened the door, Ortiz ran into the apartment. Carter then left to go to the store and did not realize the victim had been injured until she returned and saw the ambulance.
 {¶ 7} She stated she saw Ashley later that day. Ashley told her that "it was not suppose to happen that way. He was just suppose to hurt him or scare him. He wasn't suppose to kill him." Ashley then went to the apartment she shared with the victim and destroyed everything in a drunken rage.
 {¶ 8} The victim has no recollection of the attack. He only remembers going to bed and waking up in the hospital. He sustained severe brain injuries *Page 3 
which caused him to be placed in a drug-induced coma for one month and required an additional one month hospital stay. He then spent two months in a nursing home to undergoing rehabilitation. He still has problems concentrating due to the injuries he sustained.
 {¶ 9} Detective Santiago conducted an investigation of the scene. He was unable to locate a weapon. However, he stated that his conversations with Ashley led him to believe Ortiz used a pipe to assault the victim. He showed Alve Carter a photo array; she identified Ortiz as the person that was in her apartment with Ashley.
 {¶ 10} According to the detective, when Ortiz was first arrested, he stated that he did not know what the officer was talking about and that he did not know the victim. He later admitted he knew the victim but did not see him that night. He also admitted that Ashley asked him to assault and rob the victim, but denied he complied with her request.
 {¶ 11} The jury found Ortiz guilty of one count each of aggravated robbery and felonious assault and acquitted him of the remaining counts. The trial court sentenced Ortiz to seven years on each count, which were ordered to be served concurrent to each other. Ortiz appeals, assigning the following error:
 {¶ 12} "[1] The trial court erred in its judgment because its verdict was against the manifest weight of the evidence when it found the defendant-appellant guilty of aggravated robbery and felonious assault." *Page 4 
 {¶ 13} Ortiz argues his convictions are against the manifest weight of the evidence and not supported by sufficient evidence. He contends the evidence implicated his co-defendant Emily Ashley as the sole perpetrator of the crimes.
 {¶ 14} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 15} A challenge to the manifest weight of the evidence, on the other hand, attacks the credibility of the evidence presented.Thompkins, supra, at 387. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. Id., citing State v. Robinson
(1955), 162 Ohio St. 486, 487. *Page 5 
 {¶ 16} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror," and, after "reviewing the entire record, weighs the evidence and all reasonable inferences,
 {¶ 17} considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, supra, at 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 18} In support of his arguments, Ortiz argues Ashley was seen repeatedly exiting and entering the neighbor's apartment shortly before the thumping sounds; the victim's dogs did not bark during the assault, indicating they knew the assailant; Ashley was seen destroying the apartment with a hammer, a possible weapon in the assault; there is no evidence Ortiz robbed the victim as claimed by the victim; only Ashley was observed with the victim's cell phone after the victim's beating.
 {¶ 19} According to the neighbor, Ashley did exit and enter the apartment frequently to retrieve things from her apartment, such as glasses, pop, and the *Page 6 
victim's cell phone. This was all before the assault. Thereafter, she left the apartment to check on the victim and discovered he was severely injured. Moreover, the neighbor testified that Ashley was definitely in the neighbor's apartment when she heard the thumping noises, and Ortiz was the only person absent.
 {¶ 20} Although the victim's dogs did not bark, Ashley testified that the dogs knew Ortiz. Ashley, the neighbor, and the landlord, also all testified that one of the dogs was old and that both dogs were friendly to strangers. The attack also occurred in the upstairs portion of the apartment, and there is no evidence the dogs were upstairs and aware the victim was being attacked.
 {¶ 21} Ashley did destroy the apartment the next day with a hammer while in a drunken rage. However, the weapon used on the victim was never recovered; there is no evidence there was blood on the hammer used by Ashley as it was never found. Therefore, without more, the fact she had a hammer does not implicate her.
 {¶ 22} There is no evidence that Ortiz obtained money from the victim; however, Ashley testified that Ortiz took the victim's cell phone. According to her, Ortiz threw the phone in the trash but she retrieved it. The neighbor also testified that she saw the victim with the phone prior to the attack. The victim's *Page 7 
mother also testified that Ashley and the victim shared the cell phone. Therefore, the fact she had the cell phone is not dispositive of her guilt.
 {¶ 23} Our review of the record indicates the jury was provided with sufficient evidence that Ortiz was the perpetrator of the crime based on both Ashley and Carter's testimony. Ashley admitted she requested Ortiz to assault and rob the victim and contended he complied with her request. Both the neighbor and Ashley heard thumping sounds coming from the victim's apartment during the time Ortiz was absent. Ashley testified that Ortiz was red in the face, like he had been exerting himself, when he returned to Carter's apartment. Carter testified that Ortiz "ran" inside her apartment after the thumping noises ceased.
 {¶ 24} This evidence, although circumstantial, supports the convictions. Circumstantial evidence and direct evidence inherently possess the same probative value. State v. Jenks, supra at paragraph one of the syllabus. As the Court in State v. Jenks held, "[i]n some instances certain facts can only be established by circumstantial evidence. Hence, we can discern no reason to continue the requirement that circumstantial evidence must be irreconcilable with any reasonable theory of an accused's innocence in order to support a finding of guilt." Because circumstantial evidence is given the same weight as *Page 8 
direct evidence, sufficient evidence was presented in support of Ortiz's convictions.
 {¶ 25} We also find the convictions are not against the manifest weight of the evidence. The jury was apprised of Ashley's and Carter's drug addictions, and that Ashley and the victim had been arguing earlier in the evening. They were also aware that Ashley pled guilty to reduced charges. The trier of fact is in the best position to observe the witness's demeanor, voice inflection, and mannerisms in determining each witness's credibility. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Therefore, on issues of credibility, where there is no evidence the jury lost its way in its assessment and resolving conflicts in evidence, we defer to the jury. Accordingly, Ortiz's sole assigned error is overruled.
Judgment is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence. *Page 9 
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 CHRISTINE T. MCMONAGLE, P.J., and PATRICIA A. BLACKMON, J., CONCUR. *Page 1