[Cite as *State v. Campbell*, 2014-Ohio-2181.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 100246 and 100247**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# ANTONIO R. CAMPBELL

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-12-563277 and CR-12-562779

**BEFORE:** Rocco, J., S. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** May 22, 2014

**ATTORNEYS FOR APPELLANT**

Robert L Tobik
Public Defender
By:   Cullen Sweeney
Assistant Cuyahoga County Public Defender
310 Lakeside Avenue
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:     Jesse W. Canonico
          Brian Hoffman
Assistant County Prosecutors
1200 Ontario Street
Cleveland, Ohio   44113

KENNETH A. ROCCO, J.:

**{¶1}** In this consolidated appeal, defendant-appellant Antonio Campbell appeals from his conviction and sentence stemming from two cases that were tried together. Finding no merit to any of Campbell's assignments of error, we affirm the trial court's final judgment.

**{¶2}** On May 23, 2012, Campbell was indicted in Cuyahoga C.P. No. CR-12-562779, and charged with aggravated burglary,[1] two counts of gross sexual imposition,[2] two counts of kidnapping,[3] felonious assault,[4] and rape.[5] All of the charges were based on a single incident occurring on March 30, 2012, at the Loganberry Apartment Complex involving victim, A.D. ("the A.D. case").

**{¶3}** On June 25, 2012, Campbell was indicted in Cuyahoga C.P. No. CR-12-563277, and charged with two counts of aggravated burglary,[6] two counts of

---

[1] This charge carried a repeat violent offender specification and a notice of prior conviction.

[2] These charges both carried a sexually violent predator specification. The state voluntarily dismissed these specifications.

[3] Both kidnapping charges carried a repeat violent offender specification and a notice of prior conviction. One of the kidnapping charges carried a sexually violent predator specification and a sexual motivation specification.

[4] This charge carried a repeat violent offender specification, a sexually violent predator specification, and a sexual motivation specification.

[5] This charge carried a repeat violent offender specification, a sexually violent predator specification, a sexual motivation specification, and a notice of prior conviction.

[6] These charges both included a notice of prior conviction and a repeat offender specification.

kidnapping,[7] felonious assault,[8] aggravated robbery,[9] and rape.[10]  The charges in this indictment were related to two incidents occurring at the Loganberry Apartment Complex in March 2012, both involving M.W. ("the M.W. case").[11]  The rape charges stem from the first incident, and the assault charges stem from the second incident.

{¶4} The state filed a motion requesting that the trial court join the A.D. and M.W. cases.  Campbell filed a motion for relief from prejudicial joinder.  The trial court granted the state's motion and denied Campbell's motion.  Thereafter, Campbell waived his right to a jury trial and elected to proceed with a bench trial.

{¶5} Following the bench trial, the trial court found Campbell guilty on all counts and specifications in the A.D. case, except that it reserved judgment on the issue of whether the sexually violent predator specification would apply.  In the M.W. case, the trial court found Campbell guilty on both counts of aggravated burglary, both counts of

---

[7] These charges both included a notice of prior conviction, and a repeat offender specification.  One of the kidnapping charges included a sexual motivation specification and a sexually violent predator specification.

[8] This charge included a notice of prior conviction and a repeat offender specification.  The charge originally included a sexual motivation specification and sexually violent predator specification but the state voluntarily dismissed those specifications.

[9] This charge included a notice of prior conviction and a repeat offender specification.

[10] This charge included a notice of prior conviction, a repeat offender specification, and a sexually violent predator specification.

[11] M.W. is a transgender person who is physiologically a male but presents as a female. Because M.W. identifies as a female, M.W. is referred to throughout this opinion using feminine pronouns.

kidnapping, misdemeanor assault (as a lesser included offense of felonious assault), and rape. The trial court found Campbell not guilty of aggravated robbery in the M.W. case. The trial court also convicted Campbell for the repeat violent offender and notice of prior conviction specifications on each of the counts in the M.W. case and on the sexual motivation specification on one of the kidnapping charges. And, as in the A.D. case, the trial court deferred judgment on whether the sexually violent predator specifications would apply.

{¶6} The trial court conducted a separate bench trial on the sexually violent predator specifications. Following that trial, the court found Campbell guilty of all four sexually violent predator specifications that applied to one count of kidnapping and one count of rape in the A.D. case, and to one count of kidnapping and one count of rape in the M.W. case.

{¶7} After determining that some of the charges in the case were subject to merger, Campbell was sentenced to consecutive sentences as follows: (1) 12 years to life for the rape in the M.W. case; (2) 5 years for the aggravated burglary in the M.W. case; and (3) 12 years to life for the rape in the A.D. case.

{¶8} Campbell now appeals, setting forth ten assignments of error for our review:

I. The trial court violated Campbell's due process rights when it improperly joined two separate and distinct rape cases and when it improperly considered the evidence of each case as other acts evidence in the other case.

II. The trial court committed reversible error and violated Campbell's constitutional right to a fair trial by allowing the prosecutor to admit prejudicial hearsay testimony.

III. The trial court committed reversible error and violated Campbell's right to a fair trial when it improperly permitted a police officer to bolster the credibility of the alleged victim's testimony.

IV. Campbell was denied his right to a fair trial as the result of prosecutorial misconduct.

V. Campbell's convictions involving M.W. are against the manifest weight of the evidence.

VI. Campbell's convictions involving A.D. are against the manifest weight of the evidence.

VII. Campbell's aggravated burglary convictions are not supported by legally sufficient evidence.

VIII. Campbell was denied effective assistance of counsel at his initial trial.

IX. The trial court committed reversible error by allowing the prosecutor to introduce prejudicial hearsay testimony at the trial on the sexually violent predator specification.

X. Campbell was denied effective assistance of counsel at his trial on the sexually violent predator specification.

We address the assignments of error out of order where practical. For the reasons that follow, we overrule all assignments of error.

{¶9} In his first assignment of error, Campbell argues that the trial court erred in joining the A.D. case and the M.W. case. A trial court "may order two or more cases be tried together 'if the offenses * * * could have been joined in a single indictment * * *.'" *State v. Harris*, 8th Dist. Cuyahoga Nos. 98183 and 98184, 2013-Ohio-484, ¶ 8, quoting Crim.R. 13. Two or more offenses may be joined in a single indictment if the offenses "are of the same or similar character * * * or are based on two or more acts or

transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim.R. 8(A).

**{¶10}** Although the law generally favors the joinder of offenses that are of the "same or similar character," Crim.R. 14 provides that a defendant may move to sever the charges on the basis that joinder will prejudice the defendant. *Harris* at ¶ 8, citing *State v. Lott*, 51 Ohio St.3d 160, 163, 555 N.E.2d 293 (1990). The state may rebut this claim by showing that evidence of the joined offenses would be admissible even if the counts were severed, or by demonstrating that evidence of each crime joined at trial was so simple and distinct that the factfinder was able to segregate the evidence between the two offenses. *Id.* at ¶ 9, citing *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 96. We will not overturn a trial court's order denying a defendant's motion for severance unless the defendant demonstrates that his rights were prejudiced and that the trial court abused its discretion in denying severance. *Id.*, citing *Diar* at ¶ 95.

**{¶11}** Applying the foregoing to the instant case, we conclude that Campbell has not demonstrated that he was prejudiced by the joinder. Campbell waived his right to a jury trial, and his case was tried to the bench:

> The Ohio Supreme Court has repeatedly recognized that when a judge hears evidence in a bench trial, the trial court must be presumed to have "'considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *State v. Post*, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987), quoting *State v. M.W.*, 15 Ohio St.2d 146, 239 N.E.2d 65, paragraph two of the syllabus (1968).

*State v. Thomas*, 8th Dist. Cuyahoga No. 90623, 2008-Ohio-6148, ¶ 34.  Campbell has not pointed out anything in the record that would lead us to conclude that the trial court considered improper evidence in determining Campbell's guilt.

**{¶12}** Campbell argues that he was prejudiced because the only reason that he waived his constitutional right to a jury trial was because the trial court had granted the state's motion for joinder and denied his motion for severance.  Assuming that this would form the basis for a viable claim of prejudice, the record does not support Campbell's contention.  Campbell concedes that there is no discussion on the record regarding the reason why Campbell decided to waive his right to a jury trial.   The first assignment of error is overruled.

**{¶13}** In his second assignment of error, Campbell argues that the trial court erred in allowing the prosecutor to introduce prejudicial hearsay.  Campbell's counsel did not object to any of the evidence raised in this assignment of error, so our review is limited to plain error.  *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 52. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."  But even if an error exists, Campbell bears the burden of demonstrating that the outcome of the trial clearly would have been different but for the error.  *See State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

**{¶14}** "The main premise behind the hearsay rule is that the adverse party is not afforded the opportunity to cross-examine the declarant."  *State v. Primeau*, 8th Dist.

Cuyahoga No. 97901, 2012-Ohio-5172, ¶ 69. For this reason, we have found hearsay errors to be harmless where the defense had the opportunity to cross-examine the declarant. *Id. See also State v. Thompson*, 8th Dist. Cuyahoga No. 99846, 2014-Ohio-1056, ¶ 31.

{¶15} In this case, all of the alleged hearsay that Campbell objects to involves statements made by A.D. and M.W. Both A.D. and M.W. testified at trial and were subject to cross-examination. Accordingly, assuming Campbell is correct that inadmissible hearsay was entered into evidence, Campbell cannot demonstrate that there was plain error.

{¶16} Furthermore, when the trial court is the trier of fact, we presume that the judge disregards improper hearsay evidence unless there is affirmative evidence in the record to the contrary. *State v. Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659, ¶ 61. Campbell has not pointed to any statements made by the trial court that would lead us to conclude that the trial court considered inadmissible hearsay evidence in reaching its decision. For the aforementioned reasons, we overrule the second assignment of error.

{¶17} In his third assignment of error, Campbell argues that the trial court erred by improperly permitting a police sergeant to bolster the credibility of A.D.'s testimony. Sgt. Denise DeBiase of the Richmond Heights Police Department spoke with A.D. following the rape. Sgt. DeBiase testified for the prosecution at trial and testified that A.D. "was very honest" in telling her that A.D. and Campbell had smoked marijuana prior

to the rape. Tr. 248-249. Such testimony is inadmissible, because "[i]t is undisputed that a police officer may not testify as to a witness's veracity." *State v. Williams*, 8th Dist. Cuyahoga No. 95796, 2011-Ohio-5483, ¶ 56.

{¶18} Campbell asserts that his counsel never objected to this testimony, but the record reveals that defense counsel did, in fact, raise an objection. Tr. 249. The prosecutor then said, "Never mind, I withdraw it." *Id.* The trial court did not rule on the objection, but we presume that the trial court followed the rules of evidence. We, therefore, conclude that, in its role as factfinder, the trial court did not consider DeBiase's testimony that A.D. was "was very honest." *See State v. Corbin*, 8th Dist. Cuyahoga No. 82266, 2004-Ohio-2847, ¶ 10-19. Accordingly, we overrule the third assignment of error.

{¶19} In his fourth assignment of error, Campbell argues that he was denied his right to a fair trial due to prosecutorial misconduct. When reviewing a claim of prosecutorial misconduct, this court's task is to determine whether the comments and questions by the prosecution were improper and, if so, whether they prejudiced the appellant's substantial rights. *State v. Treesh*, 90 Ohio St.3d 460, 480, 739 N.E.2d 749 (2001). A conviction will not be reversed based on prosecutorial misconduct unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record. *Lott*, 51 Ohio St.3d at 166, 555 N.E.2d 293. "The touchstone of analysis 'is the fairness of the trial, not the culpability of the prosecutor.'" *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E.2d 1047, ¶ 92, quoting *Smith v. Phillips*, 455 U.S. 209,

219, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Because Campbell's counsel did not raise any objections at trial based on prosecutorial misconduct, we review Campbell's arguments under the plain-error standard of review. *See Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, at ¶ 52.

**{¶20}** Campbell argues that the prosecutor made a number of improper statements during closing arguments. But because this was a bench trial, we presume that the trial court was able to separate the wheat from the chaff. If the prosecutor made improper comments during closing arguments, we presume that the trial court did not consider those comments in reaching its verdict, unless the defendant marshals affirmative evidence to the contrary. *See State v. Nelson*, 8th Dist. Cuyahoga No. 81286, 2003-Ohio-559, ¶ 21-24. Campbell has not effectively rebutted that presumption. Moreover, assuming that improper comments were made, Campbell cannot demonstrate that the outcome of the trial would have been different but for these comments. Finding no plain error, we overrule the fourth assignment of error.

**{¶21}** In Campbell's eighth assignment of error, he argues that he received ineffective assistance of counsel at his initial trial. A criminal defendant has the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To demonstrate ineffective assistance of counsel, a defendant must satisfy both parts of a two-prong test. *Id.* at 687. The first prong requires that the defendant show that his trial counsel's performance was so deficient that

the attorney was not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution. *Id.*

{¶22} Under the second prong, the defendant must establish that counsel's "deficient performance prejudiced the defense." *Id.* We determine prejudice by analyzing whether "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "Reasonable probability" is defined as probability sufficient to undermine confidence in the outcome. *Id.* The failure to prove either prong of the *Strickland* test is fatal to a claim of ineffective assistance. *Id.* at 697.

{¶23} Campbell argues that his counsel was ineffective at his initial trial because he repeatedly failed to object to inadmissible and prejudicial evidence as well as improper prosecutorial arguments. The evidence and prosecutorial arguments that Campbell alludes to are the same ones that Campbell raises in his second, third, and fourth assignments of error.

{¶24} With regard to the bolstering, defense counsel did object, so Campbell cannot show that counsel was deficient. And a review of the record does not convince us that counsel's performance affected the outcome of the trial, especially in light of the fact that the case was tried to the bench.

{¶25} Campbell argues that his counsel failed to object to corroborative hearsay. But the declarants were the two victims, both of whom testified, in detail, as to how Campbell had raped them. The trial court could have found the victims' testimony

credible even without any corroborative testimony. And we presume that the trial court disregarded any inadmissible hearsay testimony. We similarly presume that the trial court disregarded any improper statements made by the prosecutor during closing arguments. For these reasons, we cannot say that there is a reasonable probability that without the alleged errors, the outcome of the trial would have been different. Accordingly, we overrule the eighth assignment of error.

{¶26} In his tenth assignment of error, Campbell argues that he received ineffective assistance of counsel at his trial on the sexually violent predator specification. Applying the *Strickland* standard, we conclude that Campbell cannot demonstrate that he was prejudiced by any of his counsel's alleged deficiencies.[12] R.C. 2971.01(H)(1) defines a "sexually violent predator" as "a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses."

{¶27} Before the trial on the sexually violent predator specification commenced, the trial court indicated that it was unclear on whether it could find that the specification applied based on the underlying convictions alone. The state pointed out to the trial

---

[12]Campbell argues that we should apply *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), to this assignment of error because there was an actual breakdown of the adversarial process during the trial on the sexually violent predator specification. We are unconvinced. *Cronic* "stands for the proposition that there are rare cases involving Sixth Amendment right to counsel violations, which are presumptively prejudicial." *State v. Dobson*, 8th Dist. Cuyahoga No. 92669, 2010-Ohio-2339, ¶ 16. Such cases exist where there is a complete denial or absence of counsel or where counsel completely fails to test the prosecution's case. *Id.* Campbell's counsel was present, participated in the trial, and cross-examined both witnesses. *Cronic* is inapplicable.

court that under *State v. Boynton*, 8th Dist. Cuyahoga No. 93784, 2010-Ohio-4670, the current version of the statute "allows an offender to be classified and sentenced as a sexually violent predator based on the conviction of the underlying offense contained in the indictment." *Id.* at ¶ 5.

{¶28} Campbell argues that his counsel was deficient because he was not up-to-date on current law. In support of this argument, Campbell points out that his counsel argued that the underlying convictions should not be considered in determining whether the specification should be applied. But even if Campbell's counsel misstated the law, we fail to see how Campbell was prejudiced by this error. Counsel's mistaken view of the law resulted in counsel making an argument that, if true, would have favored Campbell. And even if counsel had known the law under *Boynton*, counsel could not have changed the fact that Campbell had been convicted for rape in the two underlying cases and that the trial court could find that Campbell was a sexually violent predator based on those convictions.

{¶29} Campbell also argues that his counsel was ineffective in failing to object to hearsay testimony. The state put on two witnesses, both detectives. The first detective testified about the facts underlying Campbell's earlier conviction for sexual battery, and Campbell argues that his counsel should have objected to portions of this testimony on the basis that it was inadmissible hearsay. The second detective testified about Campbell's subsequent conviction for failing to register as a sex offender following his release from prison on the sexual battery conviction. The state also entered into evidence

two journal entries setting forth his convictions in these two cases. Campbell did not dispute that he was convicted of the offenses that were set forth in the journal entries.

**{¶30}** We conclude that the result of the proceeding would not be different even if counsel had raised hearsay objections. The trial court could easily determine that the sexually violent predator specification applied in light of the two journal entries that were admitted into evidence along with the two rape convictions in the A.D. case and the M.W. case. And, further, we presume that the trial court, as the trier of fact, disregarded any inadmissible hearsay evidence. *See Crawford*, 8th Dist. Cuyahoga No. 98605, 2013-Ohio-1659 at

¶ 61. The tenth assignment of error is overruled.

**{¶31}** We also overrule the ninth assignment of error. Campbell argues here that the trial court erred in allowing the prosecutor to introduce prejudicial hearsay testimony at the trial on the sexually violent predator specification. This is the same hearsay testimony that Campbell raises in the tenth assignment of error. Because trial counsel did not object to the testimony, our review is limited to plain error. *Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, at ¶ 52.

**{¶32}** As discussed earlier, the state presented ample other evidence to demonstrate that the sexually violent predator specification could apply to Campbell. The alleged hearsay testimony pertained to a conviction that was also proven through the admission of a journal entry. Furthermore, we presume that the trial court disregarded any inadmissable hearsay evidence. Accordingly, Campbell cannot demonstrate that the

outcome of the trial would be different but for the error. The ninth assignment of error is overruled.

{¶33} In his seventh assignment of error, Campbell argues that his convictions for aggravated burglary were not supported by legally sufficient evidence. We disagree. When reviewing the record on a sufficiency challenge, "'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶34} In the A.D. case, Campbell was convicted on one count of aggravated burglary. In the M.W. case, Campbell was convicted on two counts of aggravated burglary; one count was in conjunction with the date of the rape incident and the other was in conjunction with the date of the assault incident. All of the aggravated burglary charges were pursued under R.C. 2911.11(A)(1), which required the state to prove that Campbell "by force, stealth, or deception, * * * trespass[ed] in an occupied structure * * * with [the] purpose to commit * * * any criminal offense," and inflicted, or attempted to inflict, or threatened to inflict physical harm on another. Campbell points out that he was invited into the apartments on all three occasions.

{¶35} We have consistently read the Ohio Supreme Court's decision in *State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987), as standing for the proposition

that "a violent crime committed in the residence of one other than the defendant always constitutes aggravated burglary (i.e., the commission of the crime terminates the privilege to remain in the home)." *State v. Mitchell*, 8th Dist. Cuyahoga No. 94287, 2010-Ohio-5775, ¶ 15. *See also State v. Johnson*, 8th Dist. Cuyahoga No. 97698, 2012-Ohio-3812, ¶ 18 (relying on *Steffen* in affirming an aggravated burglary conviction and concluding that, even if the defendant had permission to enter the victim's residence, that permission was revoked when the defendant committed an "act of violence against a person who has the authority to revoke the privilege of initial entry"); *State v. Hill*, 8th Dist. Cuyahoga No. 95379, 2011-Ohio-2523, ¶ 25 (same).

{¶36} The state's evidence demonstrated that, on all three occasions, Campbell committed a violent crime against the victim while inside the victim's residence. In the A.D. case, the victim testified that Campbell choked and raped A.D. in her apartment. In the M.W. case, the victim testified that Campbell raped her in her apartment. The victim testified that on a separate occasion, Campbell repeatedly punched her while in her apartment. Regardless of how he initially gained entry, any permission given to Campbell to enter the apartments was revoked once he committed the violent acts against the victims.[13] *See Mitchell* at ¶ 15.

{¶37} Campbell's position on appeal is that the case law in our district reads *Steffen* too broadly, and that we should, therefore, reconsider our interpretation of *Steffen*.

---

[13]Campbell does not challenge the sufficiency of the evidence for the rape convictions or assault convictions, and so, for purposes of this analysis, we presume that the acts of violence took place.

But stare decisis compels us to follow our prior decisions and so we must decline Campbell's invitation. Construing the evidence in the light most favorable to the prosecution, the evidence was sufficient to sustain each conviction of aggravated burglary and we overrule the seventh assignment of error.

{¶38} In his fifth assignment of error, Campbell argues that the convictions stemming from the M.W. case are against the manifest weight of the evidence. In evaluating whether a conviction is against the manifest weight of the evidence, this court sits as the 13th juror. We are tasked with reviewing the entire record, weighing the evidence and all reasonable inferences, considering the witnesses' credibility, and determining whether the jury clearly lost its way such that there was a manifest miscarriage of justice. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We should grant a new trial only in the exceptional case where the evidence weighs heavily against the conviction. *Id.*

{¶39} Although we consider the credibility of witnesses in a challenge to the manifest weight of the evidence, we do so with the caveat that the trier of fact is in the best position to determine a witness' credibility through its observation of his or her demeanor, gestures, and voice inflections. *State v. Williams*, 8th Dist. Cuyahoga No. 98210, 2013-Ohio-573, ¶ 31, citing *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17.

{¶40} Campbell argues that his convictions in the M.W. case are against the manifest weight of the evidence because M.W. was not a credible witness. Campbell

asserts that M.W.'s rape allegation makes "little sense." In support of this argument Campbell points out the following: (1) Campbell and M.W. were friends; (2) Campbell had never suggested any sexual interest in M.W.; (3) Campbell was heterosexual; (4) M.W. is a transgender person and is physiologically a man; (5) there was no evidence of any problems between Campbell and M.W.; and (6) the alleged rape was "unprovoked" and "came out of nowhere." Campbell Br. 30. Campbell asserts that M.W.'s allegations are "bizarre" and that they are unsupported by any physical evidence.

{¶41} We first note that violent crimes often make "little sense" and a guilty verdict is not against the manifest weight of the evidence simply because the defendant's violent conduct is irrational or because there is no evidence that the victim "provoked" the defendant. If anything here makes "little sense," it is Campbell's argument that he can avoid a guilty verdict for raping a transgender person simply by asserting that he is heterosexual.[14] And we see no connection between M.W.'s credibility as a witness and the fact that Campbell had not expressed a sexual interest in M.W. prior to the rape.

{¶42} Furthermore, Campbell's convictions are not against the manifest weight of the evidence due to a lack of physical evidence. M.W. testified that she did not seek medical attention following the rape. The evidence for the rape in this case was based on the victim's testimony. "Hospital admissions do not, per se, have any relationship to credibility." *In re D.B.*, 8th Dist. Cuyahoga No. 84831, 2005-Ohio-1864, ¶ 14. The

---

[14]And it is not even clear from the record that Campbell was aware of the fact that M.W. was physiologically a man. M.W. testified that she presented as a woman and that she had never indicated to Campbell that she was a transgender person.

evidence in the M.W. case does not weigh heavily against conviction and so we overrule the fifth assignment of error.

{¶43} We also overrule Campbell's sixth assignment of error, which is based on his assertion that the convictions stemming from the A.D. case are against the manifest weight of the evidence. Campbell asserts that A.D. was not a credible witness and that her claim that she was raped is unsupported by the medical records. Campbell argues that the record supports his contention that A.D. and Campbell engaged in consensual sex.

{¶44} First, Campbell points out that there was no evidence of injuries or trauma to A.D.'s genitalia. But "a physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury." *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46. Furthermore, the state presented evidence of other physical injuries that corroborated A.D.'s testimony that the sexual contact was not consensual. A.D. testified that just before the rape, Campbell choked her almost to the point of unconsciousness. Trial testimony established that A.D. went to two different hospitals following the rape. A.D. first went to Richmond Medical Center and reported that she had been choked and raped, and she was admitted into the emergency room. Because there was no nurse trained to perform a sexual assault examination, A.D. was told to go to Hillcrest Hospital. A.D. was later examined by a sexual assault nurse at Hillcrest.

**{¶45}** Two different nurses, one from Richmond Medical and one from Hillcrest, both testified at trial that they observed petechiae around A.D.'s eyes and behind her ears. The trial court heard testimony that petechiae are broken blood vessels appearing as red dots on the skin, and that petechiae around the eyes and ears is often caused by strangulation.

**{¶46}** Campbell counters that there was also testimony that petechiae is not always caused by strangulation. He further notes that A.D. had red marks on her face at the time of trial that was almost a year after the alleged rape. A.D. testified that she had red bumps on her face at trial because she was under stress. According to Campbell, the red marks that the nurses found on A.D.'s face were these same stress-related marks and not petechiae. Campbell asserts that A.D. was under extreme stress at the time that she engaged in consensual sex with Campbell, because she was having financial and relationship difficulties.

**{¶47}** But based on the record, the factfinder could determine that the red marks on A.D.'s face at trial were different from the petechiae reported by the nurses. The testimony established that petechiae is generally flat and is beneath the skin's surface, whereas acne is textured and appears on the skin's surface. Two trained, medical professionals independently identified petechiae around A.D.'s eyes and behind her ears at the time that A.D. reported that she was raped. In contrast, the red marks on A.D.'s face at trial were described as "pimples."

{¶48} Campbell also argues that A.D.'s testimony was not credible because her initial testimony that she received medical treatment for bleeding from scratches on her neck turned out to be false. Although the nurse at Hillcrest noted abrasions on A.D.'s neck, no injuries were noted by the nurse or doctor from Richmond Medical, the first hospital where A.D. went for treatment. To the extent that this can be characterized as inconsistent testimony, this is not the kind of inconsistency that would lead us to conclude that the evidence weighed heavily against conviction. A.D. testified that Campbell strangled her and that she sustained injury to her neck as a result of that strangulation. The medical records from Hillcrest indicating abrasions on A.D.'s neck supported her allegation. We conclude that the medical evidence did not negatively impact on A.D.'s credibility as a witness. To the contrary, the medical evidence supported A.D.'s claim that she was choked and that the sex was not consensual.

{¶49} Campbell also attacks A.D.'s credibility because she was addicted to drugs, she owed Campbell money, and she had no financial means to pay off a drug debt she owed to Campbell. Campbell claims that A.D. engaged in consensual sex with Campbell in order to pay off her debt. "On issues of credibility, where there is no evidence [that] the [factfinder] lost its way in its assessment and resolving conflicts in evidence, we defer to the [factfinder]." *State v. Ortiz*, 8th Dist. Cuyahoga No. 89952, 2008-Ohio-4120, ¶ 25. The trial court was apprised of A.D.'s drug addiction and her financial situation. As the trier of fact, the trial court was in the best position to observe A.D. and to assess her credibility. A.D. was not inherently incapable of rendering credible testimony merely

because she was addicted to drugs and lacked money to pay off her drug debt. For the aforementioned reasons, we conclude that the evidence in the A.D. case does not weigh heavily against conviction and so we overrule the sixth assignment of error.

It is ordered that appellee recover from appellant the costs taxed herein.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. Defendant's convictions affirmed.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

SEAN C. GALLAGHER, P.J., and
TIM McCORMACK, J. CONCUR